IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

JOHN CHRISTOPHER FOSTER                                                    PLAINTIFF

VERSUS                                         CIVIL ACTION NO. 2:04cv343KS-MTP

COVINGTON COUNTY, MISSISSIPPI, A Political
Subdivision of the State of Mississippi; ROGER
WOOD SPEED, SHERIFF of Covington County;
JOE BULLOCK, as Agent with the Covington
County Sheriff's Department and the Southeast
Mississippi Drug Task Force, and Individually                           DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the court on Motion for Summary Judgment **[#30]** filed on behalf of Roger Wood Speed, Sheriff of Covington County and Deputy Joe Bullock, in their individual capacities. The court, having reviewed the motion and having entered an order to show cause to the plaintiff to respond and being advised that the plaintiff has wholly failed to respond and being otherwise fully advised in the premises, finds that the motion is well taken and should be granted. The court specifically finds as follows:

## FACTUAL BACKGROUND

The defendants assert that the plaintiff has advanced at least four versions of the facts surrounding this incident. As gleaned from the complaint, it appears that the

plaintiff was traveling in his Chevrolet Suburban vehicle in Covington County, Mississippi on his way home from Bassfield, Mississippi on March 10, 2003, when he was stopped by Joe Bullock.  Bullock, at that time, was a Deputy Sheriff with the Covington County Sheriff's Department and a member of the Southeast Mississippi Drug Task Force.  Bullock had gotten a tip earlier in the day that Foster would be returning to his home from Bassfield transporting crack cocaine.  Bullock also had in his possession two felony arrest warrants for Foster - one for vehicular manslaughter and the other for possession of a controlled substance.

After the initial stop, Bullock arrested Foster, handcuffed him and then placed him in the front seat of his patrol car.  Bullock then removed his K-9 from the back of his patrol car and did a walk around of Foster's vehicle.  The dog alerted twice near the front passenger door.  According to Bullock, he then proceeded to put his dog back in the patrol car and returned to Foster's vehicle to do a protective sweep.  As he was doing so, he saw Foster running toward his (Foster's) vehicle.  Bullock drew his weapon and ordered Foster to stop.  Foster leapt into the passenger side of his vehicle and locked the door.  Bullock broke the passenger window out and ordered Foster out. Foster, who had moved across the vehicle to the driver's side raised his hands and agreed to exit the vehicle.

As Bullock was passing in front of the vehicle going to the driver's side, Foster began trying to crank the vehicle.  Bullock grabbed Foster's arm through the diver's window and when Foster's right hand came up from the center console, Bullock thought he saw a flash indicating that Foster had a weapon.  Bullock retracted into a defensive position behind the B-pillar of the vehicle and fired into the left side of the vehicle as

2

Foster cranked the Suburban and sped away. After a chase that led to the Wesley Medical Center in Hattiesburg, Foster, who had been wounded by Bullock, was placed in custody.

Foster's versions of the incident vary to the extent that he contends that in addition to the walk-around with the K-9 Bullock placed the dog in his (Foster's) vehicle and allowed him to search and then Bullock himself performed a hand search of Foster's vehicle. Foster also has stated that he was outside the patrol car at all times and wriggled out of the handcuffs. He has offered no explanation as to why he tried to flee. Regardless of which version of the alleged facts the court reviews, the result is the same as set forth below.

## **STANDARD OF REVIEW**

The Federal Rules of Civil Procedure, Rule 56(c) authorizes summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986). The existence of a material question of fact is itself a question of law that the district court is bound to consider before granting summary judgment. *John v. State of La. (Bd. of T. for State C. & U.)*, 757 F.2d 698, 712 (5th Cir. 1985).

A judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a

genuine issue for trial.  There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is not limited to that role.  *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir. 1986).  "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment.  The dispute must be genuine, and the facts must be material."  *Id.*  "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment."  *Phillips Oil Company v. OKC Corporation*, 812 F.2d 265, 272 (5th Cir. 1987).  Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . all other contested issues of fact are rendered immaterial.  *See Celotex*, 477 U.S. at 323, 106 S.Ct at 2552."  *Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992).  In making its determinations of fact on a motion for summary judgment, the court must view the evidence submitted by the parties in a light most favorable to the non-moving party.  *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his motion.  *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982).  The movant accomplishes this by informing the court of the basis of its motion, and by

identifying portions of the record which highlight the absence of genuine factual issues. *Topalia*n, 954 F.2d at 1131.

"Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]." *John*, 757 F.2d at 708. However, "[s]ummary judgment cannot be supported solely on the ground that [plaintiff] failed to respond to defendants' motion for summary judgment," even in light of a Local Rule of the court mandating such for failure to respond to an opposed motion. *Id.* at 709.

However, once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence. *Ferguson v. National Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978). In other words, "the nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact." *In Re Municipal Bond Reporting Antitrust Lit.*, 672 F.2d 436, 440 (5th Cir. 1982).

To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. The nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial. Rule 56(e), Fed.R.Civ.P. *See also, Union Planters Nat. Leasing v. Woods*, 687 F.2d at 119.

While generally "'[t]he burden to discover a genuine issue of fact is not on [the] court,' (*Topalian* 954 F.2d at 1137), 'Rule 56 does not distinguish between documents

merely filed and those singled out by counsel for special attention - the court must consider both before granting a summary judgment.'" *John*, 757 F.2d at 712 (*quoting Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir. 1980)).

## **THE CLAIMS**

The plaintiff has filed this action under 42 U.S.C. § 1983 seeking redress for alleged violations of protected Constitutional rights. The plaintiff must establish, as a prerequisite to maintaining a Section 1983 claim, the following:

> (a) that the defendants were acting under color of state law, and
>
> (b) that while acting under color or state law, the defendants violated rights of the plaintiff that are protected by the United States Constitution or laws of the United States.

*Parratt v. Taylor*, 451 U.S. 527, 535; 101 S.Ct. 1908, 1912; 68 L.Ed.2d 420 (1981); *Augustine v. Doe*, 740 F.2d 322, 324 (5th Cir. 1984).

There is no issue asserted that the individual defendants were anything but acting under the color of state law in their positions as law enforcement officers of Covington County, Mississippi on the date of the incident in question, thus meeting the requirement of the first prong of the analysis. However, Speed was not the elected Sheriff at that time. The evidence submitted does not indicate whether he was employed in some other law enforcement capacity with Covington County at the time. For purposes of this opinion, the court will assume that he was as this issue is not contested nor is it solely dispositive.

To satisfy the second part of the equation, the plaintiff alleges violations under

6

the Fourth and Fourteenth Amendment to the United States Constitution and of his due process rights under the Fifth Amendment.  The complaint also contains allegations of unlawful search and seizure and intentional infliction of emotional distress under the Mississippi Constitution and statutory law.

### *FIFTH AMENDMENT CLAIMS*

The court will quickly dispose of the plaintiff's Fifth Amendment claims of violation of his due process rights.  "The Fifth Amendment applies only to the actions of the federal government, and not to the actions of a municipal government . . . ."  *Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996)(*quoting Richard v. Henson*, 70 F.3d 415, 416 (5th Cir. 1995)).  There are no claims asserted against any federal agency or entity in the plaintiff's complaint.  Therefore, any claims the plaintiff is making for alleged due process violations under the Fifth Amendment against the named defendants shall be dismissed.

### **FOURTEENTH AMENDMENT CLAIMS**

The plaintiff generally alleges violations of the Fourteenth Amendment without specifically categorizing them.  While the Fifth Circuit has stated and continues to state that the right to be free from an illegal or false arrest is protected under the Fourth and Fourteenth Amendments to the Constitution, this court recognizes, as has the Fifth Circuit, that the Supreme Court has held that pretrial deprivations of liberty are actionable only under the Fourth Amendment and not under the substantive due

process guarantees of the Fourteenth Amendment.  *See Albright v. Oliver*, 510 U.S. 266, 114 S. Ct. 807, 127 L. Ed.2d 114 (1994); and *Eugene v Alief Indep. Sch. Dist.*, 65 F.3d 1299 (5th Cir. 1995).  The plaintiff has made no allegations of procedural due process violations, post-arrest, which would be cognizable under the Fourteenth Amendment and therefore his § 1983 claims alleging violations of rights protected under this amendment should be dismissed.  The Fourth Amendment is adequate to vindicate the rights asserted by the plaintiff.

## FOURTH AMENDMENT CLAIMS

As to his remaining  claims, the plaintiff has properly alleged violations of rights protected by the Fourth Amendment to the United States Constitution and subject to the relief provided by 42 U.S.C § 1983, i.e., illegal arrest and illegal search.  In response to these claims, the defendants have asserted various defenses, including qualified immunity, which the court finds dispositive of all of the plaintiff's individual capacity claims.

### *QUALIFIED IMMUNITY*

The Fifth Circuit has held that "government officials performing discretionary functions are protected from civil liability under the doctrine of qualified immunity if their conduct violates no 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Sorenson v. Ferrie*, 134 F.3d 325, 327 (5th Cir. 1998)(*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed.

2d 396 (1982)).

Under the two step analysis employed by the Fifth Circuit in reviewing claims wherein qualified immunity has been asserted, the court must first determine "whether the plaintiff has asserted the violation of a clearly established constitutional right. If so, the court decides whether the defendant's conduct was objectively reasonable." *Sorenson*, 134 F.3d at 327 *(quoting Coleman v. Houston Indep. Sch. Dist.,* 113 F.3d 528, 533 (5th Cir. 1997)(applying the two-prong test of *Siegert v. Gilley*, 500 U.S. 226, 231-32, 111 S. Ct. 1789, 1792-93, 114 L. Ed. 2d 277 (1991)). The first step "is subdivided into three questions: (1) whether a constitutional violation is alleged; (2) whether the law regarding the alleged violation was clearly established at the time of the alleged violation; and (3) whether the record shows that a violation occurred." *Dudley v. Angel*, 209 F.3d 460, 462 *(quoting Kerr v.Lyford,* 171 F.3d 330, 339 (5th Cir. 1999)*(citing Rich v. Dollar*, 841 F.2d 1558, 1563 (11th Cir. 1988)).

The Fourth Amendment claims of illegal arrest asserted by the plaintiff "are appropriate [only] when the complaint contests the method or basis of the arrest and seizure of the person." *Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir. 2000)(*quoting Brooks v. George County, Miss.*, 84 F.3d 157, 166 (5th Cir. 1996)). The plaintiff attempts to contest the basis of his arrest but his complaint is less than pellucid on this point and is greatly confused by the varying facts alleged in support thereof.

It is well settled that to be free from illegal arrest under the Fourth Amendment "is a clearly established constitutional right." *Sorenson,* 134 F.3d at 328. Likewise, to be free from an unlawful search enjoys the same constitutional protection. Based on

9

the foregoing, the plaintiff has asserted the violation of a clearly protected constitutional right. Further, there can be no doubt but that on March 10, 2003, such rights were "clearly established." *See, e.g., Shaw v. Garrison*, 467 F.2d 113, 120 (5th Cir. 1972), *cert. denied* 409 U.S. 1024, 93 S. Ct. 467, 34 L. Ed. 2d 317 (1972). The important question, however, is to determine whether a violation of that clearly established right occurred, i.e., whether or not the defendants' conduct was objectively reasonable.

**DEPUTY BULLOCK**

The plaintiff contends that he was illegally arrested. However, "whether an arrest is illegal . . . hinges on the absence of probable cause." *Sorenson* 134 F.3d at 328 (*quoting Baker v. McCollan*, 443 U.S. 137, 144-45, 99 S. Ct. 2689, 2694-95, 61 L. Ed. 2d 433 (1979)). Of course, "a valid arrest warrant would normally insulate officers against a claim of false arrest." *Mendenhall v. Riser*, 213 F.3d 226, 232 (5th Cir. 2000). At the time of Foster's arrest, Bullock possessed two felony arrest warrants for him for crimes committed prior to the stop. Further, Bullock had received a tip that Foster was returning home and he set up a stake-out to apprehend Foster on the warrants. Bullock recognized Foster, stopped him and arrested him pursuant to the felony warrants in his possession. The plaintiff has since pled guilty to both of the crimes for which the arrest warrants were issued and is serving prison time as a result thereof. Clearly, Bullock had the requisite probable cause to stop and arrest the plaintiff on March 10, 2003, and to do so was not objectively unreasonable.

As to the plaintiff's claim of unlawful or illegal search, regardless of the version of

the alleged facts asserted by the plaintiff, Deputy Bullock was well within the law to perform any of the searches alleged by the plaintiff.  This is so because the court has found that Bullock lawfully arrested Foster and thus any search performed by Bullock of the plaintiff's person or interior passenger compartment of the Suburban was incident to that lawful arrest.  *See Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1965); and *New York v. Belton* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981).  Further, the search would have been justified based on the probable cause generated by the informant's tip that Foster was transporting illegal contraband.  *See California v. Carney*, 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985).

**SHERIFF SPEED**

The plaintiff has charged Sheriff Speed individually with liability for the alleged unconstitutional deprivation of his rights.  However, Sheriff Speed was not sworn into office until nine months after the incident in question.  Nevertheless, under § 1983, there can be no  liability based on the doctrine of *respondeat superior*.  *See Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) and *Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1303 (5th Cir. 1995).  There must be some connection between the actions of Speed and the alleged constitutional violations.  *See Baker v. Putnal*, 75 F.3d 190 (5th Cir. 1996) and *Hinshaw v. Doffer*, 785 F.2d 1260 (5th Cir. 1986).   "Supervisory officials may be liable only if: (i) they affirmatively participate in acts that cause constitutional deprivation; or (ii) implement

unconstitutional policies that causally result in plaintiff's injury." *Baker* 75 F.3d at 199, (*quoting Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir.1992)).

The plaintiff does not allege any direct participation by Sheriff Speed in any activity that led to the alleged constitutional deprivations. He does allege supervisory liability on the part of Speed for his alleged failure to train and instruct Bullock. This claim fails not only because Speed was not Bullock's supervisor on the date of the incident but in order to impose liability on Speed under this claim, the plaintiff must show an alleged unconstitutional policy implemented by Speed that led directly to the alleged deprivations. However, inadequate police training or supervision can only serve as the basis for a §1983 claim where it amounts to a deliberate indifference to the rights of the persons coming into contact with the police. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989). Liability can never be imposed on the basis of *respondeat superior*. *See Monell, supra*. Further, under Supreme Court precedent, a single episodic event of unconstitutional activity, even if such was offered by the plaintiff, is not sufficient to impose liability unless it is shown that the incident was caused by existing unconstitutional policies attributable to the policy makers. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985).

The plaintiff has failed to offer one iota of proof that Sheriff Speed failed to train and/or supervise Bullock in such a way that evinces a deliberate indifference to the rights of the plaintiff. Speed was not even the Sheriff on the date of Foster's arrest. Nor has the plaintiff offered any proof that Sheriff Speed enacted any unconstitutional

policy or procedure that led to the alleged deprivations. Such is the plaintiff's burden and his failure to meet his burden is fatal to these claims. *See Burge v. Parish of St. Tammany,* 187 F.3d 452, 472 (5th Cir. 1999).

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion for Summary Judgment **[#30]** filed on behalf of Roger Wood Speed, Sheriff of Covington County and Joe Bullock, in their individual capacities is Granted and the plaintiff's claims against these two defendants, individually, are dismissed with prejudice. A separate judgment shall be entered herein in accordance with Rule 58, Federal Rules of Civil Procedure.

SO ORDERED AND ADJUDGED this the 30th day of January, 2007.

s/ *Keith Starrett*
UNITED STATES DISTRICT JUDGE